IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JANE DOE, a minor, by next friend MARY DOE, and MARY DOE, individually, | ) ) ) | |
| *Plaintiffs*, | ) ) | Case No. |
| v. | ) ) | |
| | ) | JURY DEMANDED |
| TENNESSEE STATE UNIVERSITY, TAMARA BARNHILL, in her individual capacity, MELISSA ASHMORE, in her individual capacity, ALTIE JORDAN, in her individual capacity, MINI ROCKSTARS CHILD CARE CENTER, CO, MINI ROCKSTARS CHILD CARE & ENRICHMENT CENTER, INC., and WILLIAM ROBINSON, | ) ) ) ) ) ) ) ) ) ) ) | |
| *Defendants*. | ) | |

---

## COMPLAINT

---

Plaintiff Jane Doe, a minor, by her next friend Mary Doe, and Mary Doe, individually (collectively, "Plaintiffs"), allege the following claims against Tennessee State University ("TSU"), Tamara Barnhill, individually ("Ms. Barnhill"), Melissa Ashmore, individually ("Ms. Ashmore"), Altie Jordan, individually ("Ms. Jordan"), Mini Rockstars Child Care Center, Co., Mini Rockstars Child Care & Enrichment Center, Inc. (collectively, "Mini Rockstars"), and William Robinson ("Mr. Robinson" or "Mr. Will") (collectively, "Defendants"):

### INTRODUCTION

1.      While enrolled at Mini Rockstars through TSU's Early Head Start program, Jane Doe was sexually and physically abused by adults entrusted with her care.

2.      After the abuse was discovered, Mini Rockstars abruptly closed. TSU turned a blind eye to the situation and threatened Mary Doe with Jane Doe's removal from the Early Head Start program if she spoke about Jane Doe's abuse.

3.      This placed Mary Doe in the impossible situation of trying to choose between childcare for Jane Doe and advocating for Jane Doe's wellbeing.

4.      After Mary Doe spoke out about Jane Doe's abuse, TSU retaliated by expelling Jane Doe from the Early Head Start program.

## PARTIES, JURISDICTION, AND VENUE

5.      Mary Doe is the legal guardian of Jane Doe, a minor, and resides in in Davidson County, Tennessee.  Mary Doe brings this claim both on her own behalf and as the next friend of Jane Doe pursuant to Fed. R. Civ. P. 17.

6.      Jane Doe is a three-year-old child and resides in Davidson County, Tennessee with Mary Doe.

7.      Defendant Tennessee State University is a non-profit educational institution and public university with a principal address of 3500 John A. Merritt Blvd, Nashville, TN 37209.

8.      Defendant Tamara Barnhill is the director of Tennessee State University's Early Head Start program.

9.      Defendant Melissa Ashmore is Tennessee State University's Family & Community Engagement Coordinator.

10.     Defendant Altie Jordan is Tennessee State University's EHS Child Care Partnership Assistant Director.

11.     Defendant Mini Rockstars Child Care Center, Co., is a for-profit corporation with a principal address of 3123 Kings Lane Nashville, TN, 37218. Its registered agent is Mini Rockstars Child Care Center, Co, 3123 Kings Lane Nashville, TN, 37218.

12.     Defendant Mini Rockstars Child Care & Enrichment Center, Inc. is a for-profit corporation with a principal address of 119 Twin Oaks Drive, Nashville, TN 37211. Its registered agent is Donte M. Cleaves, 119 Twin Oaks Drive, Nashville, TN 37211.

13.     Defendant William Robinson is an individual and former employee of Mini Rockstars.

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1367.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred within this District.

## STATEMENT OF FACTS

### *TSU's Early Head Start Program*

16.     Head Start is a program of the U.S. Department of Health and Human Services ("HHS"). Head Start provides no-cost child development services to low-income children ages 0 to 5 and their families. This includes daycare, preschool, health and wellness services, and programs designed to promote family well-being and family engagement.

17.     The Early Head Start program offers services to children ages 0 to 3 and their families. The Head Start program offers services to children ages 3 to 5 and their families.

18.     To be eligible for Head Start services, a child's family must meet the Federal Poverty Income Guidelines. Additionally, children experiencing homelessness, foster children, and children from families receiving public assistance are eligible for Head Start services.

19.     Because of these eligibility standards, Head Start provides services to some of the most vulnerable populations of children in the United States.

20.     The Improving Head Start for School Readiness Act of 2007, 42 U.S.C. § 9831, *et seq.*, and its implementing regulations establish these eligibility standards.

21.     HHS issues grants to both public and private agencies; in turn, those agencies provide the services described in the Head Start Program Performance Standards (which are set forth in 45 C.F.R. §§ 1301-1305) and in accordance with the Improving Head Start for School Readiness Act of 2007.

22.     Through the Early Head Start-Child Care Partnership, Early Head Start grantees partner with local childcare providers to provide Early Head Start services.

23.     To participate in an Early Head Start-Child Care Partnership, local childcare providers must agree to meet the Head Start Program Performance Standards. Grantees must also agree to comply with the Head Start Program Performance Standards.

24.     The Head Start Performance Standards require verification of references, conducting a sex offender registry check, and conducting a criminal background check before hiring an employee.

25.     The Head Start Performance Standards require implementation of written personnel policies and procedures.

26.     The Head Start Performance Standards require ensuring that staff does not mistreat children or endanger the health or safety of children, including by engaging in physically abusive or sexually abusive behavior.

27.     The Head Start Performance Standards require reporting of any suspected or known maltreatment or endangerment of a child by staff to an HHS official.

4

28.     Defendant Tennessee State University is a public land-grant university in Nashville, Tennessee.

29.     Through its Center of Excellence for Learning Sciences, TSU administers an Early Head Start-Child Care Partnership program (the "TSU EHS Program").

30.     As described above, the TSU EHS Program is funded by federal grants from HHS. TSU has received millions of dollars of grants from HHS for the TSU EHS Program.

31.     Dr. Kimberly Smith ("Dr. Smith") is the Executive Director of the TSU EHS Program. Tamara Barnhill ("Ms. Barnhill") is the Program Director of the TSU EHS Program.

32.     By accepting HHS grant funds, TSU was obligated to "comply with the U.S. Constitution, all federal laws, and relevant Executive guidance in promoting the freedom of speech and religious liberty in the administration of federally-funded programs."

### *Mary Doe Obtains Custody of Jane Doe*

33.     Jane Doe is a minor child and is currently three years old.

34.     Mary Doe is Jane Doe's aunt.

35.     Jane Doe's biological mother (Mary Doe's sister) has been incarcerated and lives with substance use disorder.

36.     As a result, Jane Doe began living with Mary Doe in 2022. When Mary Doe became Jane Doe's guardian, she was in her mid-twenties, attending graduate school to become a therapist, and not expecting to become the parent of a one-year-old child.

37.     Despite this, Mary Doe took her role as Jane Doe's guardian very seriously and did everything she could to ensure Jane Doe had a safe and happy childhood. Mary Doe has assumed the role of Jane Doe's parent and is Jane Doe's legal guardian. Mary Doe has exclusive legal custody of Jane Doe.

5

38.     When Mary Doe obtained custody of Jane Doe, she was enrolled in Mini Rockstars, a daycare facility in Nashville, Tennessee.

39.     Mini Rockstars was one of the TSU EHS Program's partner sites, and Mary Doe enrolled Jane Doe in the EHS program.

40.     Within just a few months, Mary Doe became concerned about Jane Doe's care at Mini Rockstars because Jane Doe came home with unexplained marks, bumps, and bruises. Additionally, Mini Rockstars did not provide information regarding Jane Doe's daily activities and meals.

41.     When Mary Doe asked Mini Rockstars about each of Jane Doe's injuries, Jane Doe's teachers consistently downplayed Mary Doe's concerns or denied that any incidents occurred at school. On one occasion, a teacher responded that Jane Doe "just bruises easily because she's white."

42.     In or around the summer of 2023, Mary Doe began receiving regular calls from Mini Rockstars reporting that Jane Doe was sick, needed to be picked up early, and, on one occasion, had lice. Mary Doe took Jane Doe to doctors and specialists who confirmed that Jane Doe was not sick and did not have lice.

43.     On or around September 28, 2023, Mary Doe confronted Mini Rockstars again— about the lice allegation specifically—and, afterwards, Jane Doe's teacher, Darshereia Williams (whom Jane Doe called "Dee Dee"), refused to speak with her.

44.     Mary Doe's close friend and roommate, (referred to herein as "Alice Roe") has assumed the role of another parent to Jane Doe, and Jane Doe considers Alice Roe to be a parental figure.

45.     On one occasion, when Ms. Roe picked Jane Doe up from school, Jane Doe had a black eye. Jane Doe's teacher, "Dee Dee," told Ms. Roe that Jane Doe "tripped and fell over her own feet." However, later that evening, Jane Doe began saying that "Momo pushed her." "Momo" is the name Jane Doe used for Ruthie Williams, her other teacher. Darshereia Williams and Ruthie Williams are sisters and are both daughters of the director of Mini Rockstars, Truemetra Williams.

46.     Throughout Jane Doe's enrollment at Mini Rockstars in 2023, Mary Doe had multiple conversations with Melissa Ashmore ("Ms. Ashmore"), TSU's Family & Community Engagement Coordinator, documenting her concerns.

47.     During one call, in or around September 2023, Mary Doe told Ms. Ashmore about Jane Doe's black eye. Mary Doe told Ms. Ashmore there was no incident report and no accountability from Mini Rockstars.

48.     Mary Doe followed up with Ms. Ashmore by texting videos of Jane Doe's black eye; Ms. Ashmore confirmed receipt and said she would forward the videos to Altie Jordan ("Ms. Jordan"), the EHS Child Care Partnership Assistant Director.

49.     In response to this complaint, Ms. Ashmore began the process of "aging up" Jane Doe (*i.e.*, moving her to the older class at Mini Rockstars). Mr. Robinson (whom Jane Doe called "Mr. Will") and Linda Robinson (whom Jane Doe called "Ms. Linda") taught the older class.

50.     Ms. Ashmore claimed the new classroom had great management and assured Mary Doe there would be no further issues. She promised Mary Doe she would investigate Jane Doe's black eye, including reviewing any available security footage; however, she failed to follow up with Mary Doe.

51.     Despite Mary Doe's documented concerns, however, neither Ms. Ashmore, anyone at Mini Rockstars, nor anyone at TSU ever reported suspected child abuse to the Tennessee Department of Children's Services ("DCS") or HHS.

52.     In or around September and October 2023, Jane Doe said on multiple occasions that "Momo" pushed her. To this day, Jane Doe continues to disclose that "Momo" and "Dee Dee" pushed and bit her. For example, while recently playing "school" with dolls she named "Momo" and "Dee Dee," Jane Doe said, "But Momo and Dee Dee don't bite at this school. They don't push and they don't bite."

53.     When Mary Doe called the Director of Mini Rockstars, Truemetra Williams, to discuss these allegations, Ms. Williams replied that Jane Doe must be lying.

54.     In or around November 2023, Mini Rockstars moved Jane Doe to Mr. Will and Ms. Linda's class.

55.     Within just a few months, Mary Doe began observing more concerning issues. In or around March 2024, Jane Doe began saying she did not want to go to school, she was scared, and she did not want Mary Doe to leave her.

56.     Throughout March and April 2024, Mary Doe continued to observe multiple injuries of unknown origin on Jane Doe's body, including a bite mark on her back, scratches on her belly, and bruising in between her legs. When Mary Doe asked Mini Rockstars about each injury, it consistently claimed to have no information about their causes or any related incidents; furthermore, it failed to file any incident reports or report any suspected abuse.

57.     In fact, on one occasion, Mr. Will said something to the effect of, "Jane Doe is just going to get hurt" because "she is in a rough class."

58.     In or around April 2024, Mary Doe, Jane Doe, and Alice Roe moved to a new house, and Mary Doe decided to wait to toilet train Jane Doe until after the transition. Mary Doe told Mini Rockstars about this decision.

59.     Despite these conversations, Jane Doe began coming home from school reporting that Mr. Will placed her on the toilet. Jane Doe also told Mary Doe that Mr. Will placed at least one other female child on the toilet.

60.     Mary Doe addressed this issue with Ms. Linda at Mini Rockstars because: (1) she was under the impression that only female staff would be helping with toileting; and (2) she specifically told Mini Rockstars that she was not ready to toilet train Jane Doe.  Ms. Linda denied that Mr. Will put Jane Doe on the toilet and claimed only she changed Jane Doe's diapers. Mini Rockstars took no further action to address Mary Doe's concerns.

61.     Mary Doe also addressed this issue with Ms. Ashmore at TSU. Ms. Ashmore replied that no explicit policy required female caretakers to help female children with toileting, so there was no reason why Mr. Will should not help Jane Doe on the toilet. Ms. Ashmore also brushed off Mary Doe's concerns and took no action to stop or correct Mr. Will's behavior.

62.     Throughout May 2024, Jane Doe continued to say that she did not want to go to school because she was scared. She appeared increasingly stressed and anxious about drop-off.

63.     On or around May 29, 2024, Mary Doe received a text from Mini Rockstars stating that Jane Doe defecated and smeared it all over herself during naptime. While in Mary Doe's custody, Jane Doe never engaged in this type of behavior. A similar incident happened with another student in Jane Doe's class, and then again with Jane Doe, during times when the children were supposed to be supervised.

*Jane Doe Discloses Sexual Abuse*

64.     On or around June 2, 2024, as Mary Doe gave Jane Doe a bath, Jane Doe attempted to insert a cylindrical object into her vagina. Mary Doe stopped her and told her it was unsafe to do so.

65.     Mary Doe works as a therapist but does not treat children. On or around June 2, 2024, she therefore reached out to several colleagues who treat children to ask if Jane Doe's behavior was developmentally typical for her age. They responded that it was not.

66.     Mary Doe asked those same colleagues for advice and direction regarding how to handle the situation.

67.     They advised Mary Doe to continue monitoring Jane Doe's behavior and to ask Jane Doe open-ended, non-suggestive questions to gather additional information from Jane Doe. As a result, Mary Doe and Ms. Doe continued to try to gather additional information from Jane Doe by asking her non-leading, open-ended questions when Jane Doe engaged in object insertion behaviors.

68.     Mary Doe had a conversation with Mini Rockstars about Jane Doe's behavior, and the daycare denied all knowledge of what Jane Doe could be talking about or imitating.

69.     Throughout June 2024, Mary Doe observed Jane Doe trying to insert objects into her body on multiple occasions. Each time, Mary Doe told Jane Doe her it was not safe to do so and removed the objects Jane Doe tried to insert.

70.     Jane Doe began to startle easily and began avoiding physical touch by people she used to love touching. She began to say, "Don't hurt me," when Mary Doe and Ms. Roe changed her diapers. She also began to scream, cry, and cover her ears at elevated noises, which never happened before.

71.     On or around July 12, 2024, a friend picked Jane Doe up from school and observed her refusing to hug anyone or make physical contact with her friends or teachers. Later that evening, Jane Doe made thrusting motions that simulated sexual activity on a friend's child.

72.     On or around July 14, 2024, as Mary Doe gave Jane Doe a bath, Jane Doe tried to insert an object into her body. Mary Doe asked Jane Doe where she learned that behavior, and Jane Doe said, "Mr. Will." She said, "Mr. Will plays sticky sticky bee in my butt," and "Mr. Will plays sticky sticky in my vagina."

73.     After putting Jane Doe to bed that night, Mary Doe called DCS to report Jane Doe's disclosure.

74.     After July 14, 2024, Jane Doe's disclosures continued. Jane Doe stated she licked a student's penis with Mr. Will. On another occasion, Jane Doe was spitting and Ms. Roe told her to stop. Jane Doe responded, "Mr. Will spits on my vagina."

75.     On another day, while with Ms. Roe, Jane Doe was sitting in her car seat, held out two fingers, touched her genitalia, and said "sticky sticky." Ms. Roe asked Jane Doe who she does this with, and Jane Doe responded, "Mr. Will."

76.     When Ms. Roe asked Jane Doe more questions about this disclosure, Jane Doe responded all her friends go outside with Ms. Linda while Mr. Will says, "No [Jane Doe]!" and takes her inside. She said she and Mr. Will play "sticky sticky" together.

### TSU and Mini Rockstars' Response to Jane Doe's Disclosure

77.     On or around July 15, 2024, Mary Doe called Ms. Ashmore at TSU to update her on Jane Doe's allegations and inform her that Jane Doe would not return to school until the investigation concluded. Ms. Ashmore responded she knew Mr. Robinson and the teachers at Mini Rockstars and stated something to the effect of, "They are really good people. This is hard for me

to believe. Is there any chance [Jane Doe] heard these things from somewhere else?" and "Well, she is two years old, so maybe she wasn't really harmed and is just being two."

78. On or around July 16, 2025, on a call between Ms. Ashmore and Mary Doe, Ms. Ashmore questioned why Mary Doe reported Jane Doe's disclosures to DCS. Mary Doe responded she was a mandated reporter and therefore had to report Jane Doe's disclosure of abuse to DCS.

79. On the same call, Ms. Ashmore repeatedly asked Mary Doe if Jane Doe would stay at Mini Rockstars or transfer to another daycare center. Mary Doe responded that she needed to wait for the conclusion of the investigation and DCS's recommendations before making any decisions.

80. On or around July 24, 2024, on another call between Ms. Ashmore and Mary Doe, Ms. Ashmore continued to repeatedly question Mary Doe about whether Jane Doe would remain at Mini Rockstars. Mary Doe again replied that she needed to wait for the conclusion of the investigation and DCS's recommendations before making any decisions.

81. Approximately one week later, Ms. Ashmore called Mary Doe and stated something to the effect of, "Due to the nature of [Jane Doe]'s allegations and the wellbeing of our staff, TSU EHS has decided that Jane Doe will no longer be a student at Mini Rockstars. You can transfer her to a new school within our program, or we will end our services for you."

82. This call distressed Mary Doe. It became evident that TSU was threatening Jane Doe's removal from the TSU EHS program in retaliation for Mary Doe's report to DCS, and the resulting consequences of that report.

83. Because Mary Doe is related to Jane Doe, she receives no financial assistance for Jane Doe's care. Removal from the TSU EHS Program would therefore impose a significant

financial hardship for Mary Doe. Furthermore, Jane Doe needed to be placed in another childcare facility without unnecessary delay to retain stability in her life.

84.     Feeling threatened, Mary Doe agreed to transfer Jane Doe to another daycare center within the TSU EHS program.

### *DCS's Investigation into Jane Doe's Disclosures*

85.     On or around July 15, 2024, DCS opened a case within its Special Investigations Unit and began an investigation into Mini Rockstars, TSU, and Mr. Robinson.

86.     Because of the nature of the allegations, DCS also referred the case to the Metro Nashville Police Department ("MNPD"), and MNPD assigned a detective to the case.

87.     During the DCS investigation, Mini Rockstars denied all of Jane Doe's allegations.

88.     Throughout DCS's investigation into Jane Doe's disclosures, Defendants responded defensively in support of Mr. Robinson, brushed off her concerns, neglected to conduct any of their own investigations, and openly denied that any abuse occurred. The detective and/or DCS investigator working on Jane Doe's case told Mary Doe it was "evident they are trying to protect their teachers."

89.     DCS concluded that Mr. Robinson, identified as a perpetrator, had to be removed from Mini Rockstars under a safety plan.

90.     Within weeks, Mini Rockstars shut down completely. However, no one at Mini Rockstars or TSU informed Mary Doe, the detective on Jane Doe's case, or anyone at DCS about this decision. Instead, Mary Doe found out via a text message from another parent. When Mary Doe contacted Ms. Ashmore, she said TSU already knew about the closure. Upon information and belief, no one at TSU alerted DCS or the detective working on the case about the closure. Instead, Mary Doe personally informed DCS and the detective that Mini Rockstars abruptly closed.

91.     As a result, the MNPD detective and DCS scrambled to collect the evidence they needed on a shortened timeline.

92.     After Mini Rockstars closed, DCS closed Jane Doe's case, as well. However, the criminal complaint remained open, should Mary Doe and/or Jane Doe decide to pursue criminal charges later.

93.     In or around November 2024, Jane Doe began counseling with the Nashville Children's Alliance.

***Jane Doe Transfers to Another TSU EHS Program Partner Site***

94.     After Mary Doe agreed to transfer Jane Doe to another TSU EHS Program Partner Site, Ms. Ashmore assured Mary Doe none of the staff from Mini Rockstars would be re-employed at any of its other partnership daycare centers.

95.     Ultimately, TSU only gave Mary Doe the option of transferring Jane Doe to one school, Trinity Way Enrichment Center ("Trinity Way").[1]

96.     On or around September 12, 2024, when Mary Doe and Jane Doe toured Trinity Way, the school's Director and owner, Katina Henderson ("Ms. Henderson"), mentioned in passing that she was in the process of hiring various teachers from Mini Rockstars for the Early Head Start classroom where Jane Doe would be placed.

97.     Mary Doe responded that she would not be comfortable placing Jane Doe in a classroom with certain personnel from Mini Rockstars because of Jane Doe's disclosures of abuse and sexual abuse. Mary Doe provided Mr. Robinson's name; Ms. Henderson confirmed he was not one of the applicants being considered. Mary Doe told Ms. Henderson she would be

---

[1] Although TSU originally gave Mary Doe the option of transferring Jane Doe to a different school (Unique Kids), Unique Kids told Mary Doe it decided to end its partnership with TSU. After that, Trinity Way was presented as Jane Doe's only option.

uncomfortable with Jane Doe being in a classroom with any former Mini Rockstars staff because of the abuse she endured.

98. On or around September 18, 2024, Mary Doe received a string of frantic calls and text messages from Ms. Ashmore, asking to schedule a meeting with herself and the Assistant Director, Ms. Jordan, as soon as possible.

99. Mary Doe, Ms. Ashmore, and Ms. Jordan met via Zoom the following day. Ms. Ashmore and Ms. Jordan began the call by stating something to the effect of, "So we heard that you decided to talk about [Jane Doe]'s case with another daycare center, and you need to know that you doing that makes us look bad." They reprimanded Mary Doe for informing Ms. Henderson about Jane Doe's case against Mini Rockstars and expressed frustration with how Mary Doe's actions affected their reputation and caused problems for them internally and with their partnership sites.

100. The TSU representatives said that "for the safety of everyone," Mary Doe could not discuss Jane Doe's abuse with anyone connected to the TSU EHS program—and, if she did, they could remove Jane Doe from the EHS program "to protect the safety of the centers they partner with." They said that if Mary Doe had concerns, she should voice them directly to TSU (rather than anyone at another EHS partner site) so they could "control the narrative" and address the issue.

101. Mary Doe reiterated her concern about simply wanting Jane Doe to have a fresh start, without fear of trauma from contact with the former Mini Rockstars staff. The two TSU representatives promised Mary Doe that Trinity Way would have nothing to do with Mini Rockstars and agreed to notify her if there were any decisions regarding Mini Rockstars that would impact Jane Doe

102.     In March 2025, however, Ms. Henderson told Mary Doe that Trinity Way was in the process of hiring Dee Dee and Momo—two of the teachers that Jane Doe said pushed her.

103.     Mary Doe asked Ms. Henderson to call TSU regarding Dee Dee and Momo—abiding by TSU's wishes to voice her concerns through them, rather than explain the situation to Ms. Henderson herself. While Jane Doe was at therapy, Ms. Henderson called TSU. Ms. Henderson then told Mary Doe that TSU had no reservations about her hiring the former Mini Rockstars employees. When Ms. Henderson tried to ask Mary Doe for more information, Mary Doe replied she was not allowed to say anything more—again, abiding by TSU's directive to remain silent.

104.     On or around March 6, 2025, Mary Doe contacted TSU herself, asking to speak with someone regarding the new hires and her increasing distress about Jane Doe's safety.

105.     That same day, Mary Doe learned that Dee Dee and Momo were already on Trinity Way's campus and, while there, they hugged and held Jane Doe

106.     After being hugged by Dee Dee and Momo, Jane Doe said something to the effect of "Mr. Will is a very bad man." One of them stated something to the effect of, "No he's not, [Jane Doe]!" This caused Mary Doe great concern, especially considering that Dee Dee and Momo would be witnesses in any future criminal case.

107.     Jane Doe happened to have a therapy appointment the same day that Dee Dee and Momo hugged and held her at Trinity Way. At the therapy appointment, Jane Doe made additional disclosures to her therapist about the abuse she endured.

108.     Jane Doe urinated herself after talking about the abuse in therapy that day. In children, urination and/or bowel accidents (such as the bowel accident Jane Doe previously had at Mini Rockstars) can be a symptom of sexual abuse.

109.    As a result of this disclosure at therapy, Jane Doe's therapist filed another DCS report.

110.    On or around March 14, 2025, Mary Doe called Ms. Barnhill and Ms. Jordan regarding the need to protect Jane Doe from the perpetrators of her abuse.

111.    Ms. Barnhill and Ms. Jordan responded that because the first DCS case was closed and Dee Dee and Momo passed their background checks, they did not understand why Trinity Way shouldn't hire Dee Dee and/or Momo.

112.    Mary Doe explained that the criminal investigation remained open. Mary Doe also stated that she told both TSU and Trinity Way she did not want Jane Doe to have further contact with the individuals involved in her abuse at Mini Rockstars.

113.    Ms. Barnhill and Ms. Jordan denied knowledge of the ongoing criminal investigation and said they had no obligation to inform Mary Doe about the new hires.

114.    After the call, Mary Doe reminded Ms. Henderson about Jane Doe's sexual abuse and the increasing fear she had for Jane Doe's safety.

115.    Ms. Henderson decided to hire the two teachers anyway. She scheduled them to begin working in Jane Doe's classroom the following week.

116.    DCS then opened another case against "Momo," "Dee Dee," and Mr. Robinson.

117.    As a result, Mary Doe withheld Jane Doe from school, scared for her safety and wellbeing, especially considering there was (and still is) an open DCS case pending against both "Momo" and "Dee Dee," who were hired to teach in Jane Doe's classroom.

118.    On or around March 25, 2025, Ms. Henderson texted Mary Doe, asking if she planned to keep Jane Doe at Trinity Way. Mary Doe responded, "The DCS case is still open. We are uncomfortable making that decision and knowing what to do next, until DCS finishes their side

of the investigation. We are hoping to have some clarity from DCS this week on next steps. I have made TSU aware of this, as well."

119. However, on April 7, 2025, without waiting for an update, Ms. Barnhill emailed Mary Doe, stating that "effective April 8, 2025, Jane Doe will no longer be enrolled in the Early Head Start program."

120. Jane Doe remains in therapy. During assessments in therapy, Jane Doe has high scores regarding probable PTSD and the high impact of the traumatic events that took place at Mini Rockstars.

121. Likewise, Mary Doe had sustained financial injuries (both in the form of lost wages and expenses) and severe emotional injuries because of the harm to Jane Doe and the retaliation she endured after speaking out about the harm.

## COUNT ONE: FIRST AMENDMENT RETALIATION
### IN VIOLATION OF 42 U.S.C. § 1983
*By Mary Doe, individually, against Melissa Ashmore, individually,*
*Altie Jordan, individually, and Tamara Barnhill, individually*

122. Plaintiffs incorporate Paragraphs 1 through 121 above as if each has been fully stated herein.

123. Mary Doe engaged in constitutionally protected speech when she discussed the abuse Jane Doe endured in a federally funded Early Head Start program, which is a matter of public concern.

124. When Ms. Ashmore and Ms. Jordan, acting under color of state law, forbade Mary Doe from discussing Jane Doe's abuse and threatened to remove Jane Doe from the Early Head Start program if Mary Doe discussed Jane Doe's abuse, they created a prior restraint on Mary Doe's ability to engage in free speech.

125. After Mary Doe spoke out about Jane Doe's abuse, Ms. Barnhill, acting under color of state law, expelled Jane Doe from the Early Head Start program in retaliation for Mary Doe discussing the abuse Jane Doe endured.

126. Mary Doe had a clearly established right to exercise her free speech rights without retaliation, and reasonable officers in Ms. Jordan's, Ms. Ashmore's, and Ms. Barnhill's positions would have known that this retaliation would violate clearly established law.

127. These adverse actions would deter a person of ordinary firmness from continuing to engage in constitutionally protected speech.

128. As a result of these actions, Ms. Jordan, Ms. Ashmore, and Ms. Barnhill retaliated against Mary Doe for her exercise of her First Amendment right to free speech in violation of 42 U.S.C. § 1983.

129. As a result of Defendants' violations of § 1983, Mary Doe is entitled to compensatory damages in an amount to be determined at trial, other equitable relief, and reasonable costs and attorney's fees.

130. Because Defendants' actions involved reckless or callous indifference to the federally protected rights of Mary Doe, Mary Doe seeks punitive damages in an amount to be determined at trial.

### COUNT TWO: FIRST AMENDMENT RETALIATION
### IN VIOLATION OF 42 U.S.C. § 1983
***By Jane Doe, a minor, by next friend Mary Doe, against Tamara Barnhill, individually***

131. Plaintiffs incorporate Paragraphs 1 through 130 above as if each has been fully stated herein.

132. Mary Doe engaged in constitutionally protected speech when she discussed the abuse Jane Doe endured in a federally funded Early Head Start program, which is a matter of public concern.

133. After Mary Doe spoke out about Jane Doe's abuse, Ms. Barnhill, acting under color of state law, retaliated against Jane Doe for Mary Doe's speech by expelling Jane Doe from the Early Head Start program.

134. Mary Doe had a clearly established right to exercise her free speech rights without retaliation and Jane Doe had a right to be free from retaliation for her relative's protected speech. A reasonable officer in Ms. Barnhill's position would have known that this retaliation would violate clearly established law.

135. These adverse actions would deter a person of ordinary firmness from continuing to engage in constitutionally protected speech.

136. As a result of these actions, Ms. Barnhill retaliated against Jane Doe for Mary Doe's exercise of her First Amendment right to free speech in violation of 42 U.S.C. § 1983.

137. As a result of Ms. Barnhill's violations of § 1983, Jane Doe is entitled to compensatory damages in an amount to be determined at trial, other equitable relief, and reasonable costs and attorney's fees.

138. Because Ms. Barnhill's actions involved reckless or callous indifference to the federally protected rights of Jane Doe, Jane Doe seeks punitive damages in an amount to be determined at trial.

**COUNT THREE: DENIAL OF PROCEDURAL DUE PROCESS AS GUARANTEED BY THE FOURTEENTH AMENDMENT IN VIOLATION OF 42 U.S.C. § 1983**
*By Jane Doe, a minor, by next friend Mary Doe, and Mary Doe, individually, against Tamara Barnhill, individually*

139.    Plaintiffs incorporate Paragraphs 1 through 138 above as if each has been fully stated herein.

140.    Plaintiffs had a property interest in Jane Doe's enrollment in the Early Head Start program. Head Start is a public benefit, and eligible enrollees are entitled to Head Start benefits pursuant to the Head Start Act and its implementing regulations. Families rely on the governmentally-provided Head Start program benefits to provide childcare so parents and guardians can sustain gainful employment to support themselves and their families.

141.    Before Jane Doe's expulsion from the Early Head Start Program, Plaintiffs did not receive adequate notice or a pre-deprivation hearing.

142.    Any reasonable employee in Ms. Barnhill's position should have known that depriving Plaintiffs of their property interests without adequate notice or a meaningful opportunity to be heard violated due process.

143.    As a result of these acts and omissions, Ms. Barnhill deprived Plaintiffs of property without due process, as guaranteed by the Fourteenth Amendment's Due Process Clause, in violation of 42 U.S.C. § 1983.

144.    As a result of Ms. Barnhill's violations of § 1983, Plaintiffs are entitled to compensatory damages in an amount to be determined at trial, other equitable relief, and reasonable costs and attorney's fees.

145.    Because Ms. Barnhill's actions involved reckless or callous indifference to the federally protected rights of Plaintiffs, Plaintiffs seek punitive damages in an amount to be determined at trial.

## COUNT FOUR: VIOLATION OF TITLE IX
## OF THE EDUCATION AMENDMENTS OF 1972, 20 U.S.C. § 1681, *et seq.*
*By Jane Doe, a minor, by next friend Mary Doe, against Tennessee State University, Mini Rockstars Child Care Center, Co., and Mini Rockstars Childcare & Enrichment Center, Inc.*

146.    Plaintiffs incorporate Paragraphs 1 through 145 above as if each has been fully stated herein.

147.    Mr. Robinson sexually assaulted Jane Doe while she was enrolled at Mini Rockstars through TSU's Early Head Start program.

148.    Mary Doe immediately informed Ms. Ashmore with TSU about Jane Doe's disclosure of abuse.

149.    Both TSU and Mini Rockstars' response to the report of sexual assault was clearly unreasonable. Ms. Ashmore's first response to Mary Doe was to state: (a) she knew Mr. Robinson and the teachers at Mini Rockstars; (b) something to the effect of, "They are really good people. This is hard for me to believe. Is there any chance [Jane Doe] heard these things from somewhere else?"; and (c) "Well, she is two years old, so maybe she wasn't really harmed and is just being two." The following day, Ms. Ashmore questioned Mary Doe about why she reported Jane Doe's disclosures to DCS.

150.    Both Defendants had authority to take corrective action. As the grantee, TSU had responsibility for ensuring compliance with the Head Start Program Performance Standards. This included ensuring that all staff, consultants, contractors, and volunteers did not engage in behaviors that could endanger the health or safety of children. Mini Rockstars also had a duty to ensure compliance with the Head Start Program Performance Standards. Additionally, as Mr. Robinson's employer, Mini Rockstars had the authority to take corrective action regarding Mr. Robinson's abuse.

151. Both TSU and Mini Rockstars responded defensively in support of Mr. Robinson, brushed off Mary Doe's concerns, neglected to conduct any of their own investigations, and openly denied that any abuse occurred. The detective and/or DCS investigator working on Jane Doe's case said it was "evident they are trying to protect their teachers."

152. Within weeks of the beginning of the DCS investigation, Mini Rockstars abruptly closed its doors. Although TSU knew about the closure, neither TSU nor Mini Rockstars contacted DCS about the closure.

153. This abrupt closure—without notice—thwarted the DCS investigation.

154. TSU and Mini Rockstars' deliberate indifference caused Jane Doe to be excluded from participation in, be denied the benefits of, and/or be subjected to discrimination under an education program and an activity receiving Federal financial assistance. TSU expelled Jane Doe from Mini Rockstars, then expelled Jane Doe from the Early Head Start program altogether. An objectively reasonable fear of further harassment caused Mary Doe to withhold Jane Doe from attending Mini Rockstars during the pendency of the DCS investigation. An objectively reasonable fear of further harassment caused Mary Doe to withhold Jane Doe from attending Trinity Way after learning that it planned to hire staff from Mini Rockstars.

155. As a result, Jane Doe was deprived of the educational opportunities available to other students in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*

156. As a result of TSU's violations of Title IX, Jane Doe is entitled to damages in an amount to be determined at trial, equitable relief, and reasonable costs and attorney's fees.

**COUNT FIVE: RETALIATION IN VIOLATION OF**
**TITLE IX OF THE EDUCATION AMENDMENTS OF 1972, 20 U.S.C. § 1681,** *et seq.*
*By Jane Doe, a minor, by next friend Mary Doe, and Mary Doe, individually,*
*against Tennessee State University*

157.    Plaintiffs incorporate Paragraphs 1 through 156 above as if each has been fully stated herein.

158.    Title IX of the Education Amendments of 1972 provides that "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." 20 U.S.C. § 1681a.

159.    TSU receives federal financial assistance in the form of HHS grants for its Early Head Start program.

160.    Mary Doe engaged in protected activity when she spoke out about and complained about Mr. Robinson's sexual abuse of Jane Doe.

161.    TSU knew about Mary Doe's protected activity.

162.    Plaintiffs suffered an adverse school-related action when: (a) Jane Doe was expelled from Mini Rockstars before its abrupt closure; and (b) Jane Doe was expelled from the Early Head Start program altogether.

163.    There is a causal connection between the protected activity and the adverse action. TSU expressly threatened to remove Jane Doe from the Early Head Start program if Mary Doe spoke out about the sexual abuse Jane Doe endured.

164.    As a result of these acts and omissions, TSU retaliated against Plaintiffs for Mary Doe's protected activity in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*

165. As a result of TSU's violations of Title IX, Plaintiffs are entitled to damages in an amount to be determined at trial, equitable relief, and reasonable costs and attorney's fees.

## COUNT SIX: BATTERY
### *By Jane Doe, a minor, by next friend Mary Doe, and Mary Doe, individually, against William Robinson*

166. Plaintiffs incorporate Paragraphs 1 through 165 above as if each has been fully stated herein.

167. Mr. Robinson engaged in sexual contact with Jane Doe for the clear and express purpose of sexual gratification or arousal.

168. The contact was unpermitted, harmful, offensive, and violated Jane Doe's personal dignity.

169. As a minor child, Jane Doe could not consent to the contact.

170. As a result, Jane Doe was both physically and psychologically injured. She has suffered and will continue to suffer severe emotional injuries and distress.

171. Additionally, because of Robinson's actions, Mary Doe has suffered the loss of Jane Doe's services and incurred medical expenses on behalf of Jane Doe.

172. As a result of these actions, Plaintiffs seek compensatory damages in an amount to be determined at trial.

173. Because Robinson's misconduct was malicious, intentional, and/or reckless, Plaintiffs seek punitive damages in an amount to be determined at trial.

## COUNT SEVEN: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### *By Jane Doe, a minor, by next friend Mary Doe, and Mary Doe, individually, against William Robinson*

174. Plaintiffs incorporate Paragraphs 1 through 173 above as if each has been fully stated herein.

175. Mr. Robinson engaged in sexual contact with Jane Doe, a minor.

176. Sexual contact with a child is an action that is so outrageous that it is not tolerated by civil society, as evidenced by its criminalization in Tennessee.

177. Mr. Robinson's sexual contact with Jane Doe resulted in serious mental injury to Jane Doe Since the sexual contact, Jane Doe has experienced physiological and psychological manifestations of emotional distress.

178. Additionally, because of Mr. Robinson's actions, Mary Doe has suffered the loss of Jane Doe's services and incurred medical expenses on behalf of Jane Doe.

179. As a result of these actions, Plaintiffs seek compensatory damages in an amount to be determined at trial.

180. Because Mr. Robinson's misconduct was malicious, intentional, and/or reckless, Plaintiffs seek punitive damages in an amount to be determined at trial.

## COUNT EIGHT: NEGLIGENT SUPERVISION
*By Jane Doe, a minor, by next friend Mary Doe, and Mary Doe, individually, against Mini Rockstars Child Care Center, Co. and Mini Rockstars Childcare & Enrichment Center, Inc.*

181. Plaintiffs incorporate Paragraphs 1 through 180 above as if each has been fully stated herein.

182. Mr. Robinson was Defendant Mini Rockstars' employee.

183. Mini Rockstars owed Mary Doe and Jane Doe a duty of reasonable care. It owed Mary Doe and Jane Doe a duty to supervise its employees appropriately and to ensure its employees did no harm. As a daycare center, Mini Rockstars also owed Mary Doe and Jane Doe a heightened duty to care for the well-being and safety of young, vulnerable children.

184. Mini Rockstars breached these duties by failing to adequately supervise Mr. Robinson, Darshereia Williams, and/or Ruthie Williams even after Mary Doe repeatedly

complained about unexplained injuries Jane Doe sustained at school (including a black eye, bites, scratches, and bruising in between her legs) and inappropriate conduct (including Mr. Robinson toileting Jane Doe).

185.    Mini Rockstars breached these duties by failing to comply with the Head Start Performance Standards, which required Mini Rockstars to: (a) ensure that their staff does not mistreat children or endanger the health or safety of children, including by engaging in physically abusive or sexually abusive behavior; and (b) report any suspected or known maltreatment or endangerment of a child by its staff to an HHS official.

186.    As a result of Mini Rockstars' breaches of duty, Jane Doe was injured both physically and psychologically.

187.    Jane Doe's injuries were caused in fact by Mini Rockstars' breaches of duty.

188.    Jane Doe's injuries were proximately or legally caused by Mini Rockstars' breaches of duty. Mini Rockstars' conduct was a substantial factor in her injuries. Because Mini Rockstars knew that Jane Doe was being injured in class and that Mr. Robinson had behaved inappropriately towards Jane Doe (not only by toileting her, but by keeping her inside alone while her classmates and teacher went outside) her injuries were reasonably foreseeable.

189.    Because Mary Doe put Mini Rockstars on notice about Jane Doe's unexplained injuries, Jane Doe's disclosures about being pushed and bit by Darshereia Williams and/or Ruthie Williams, and Mr. Robinson's inappropriate conduct, Mini Rockstars knew or should have known that Jane Doe's injuries were reasonably foreseeable and that Darshereia Williams, Ruthie Williams, and Mr. Robinson were unfit for employment.

190.    Darshereia Williams, Ruthie Williams, and Mr. Robinson's misconduct—*i.e.*, their abuse of Jane Doe—had a direct connection or relevance to the conduct that caused Jane Doe's

injuries in this case, because Jane Doe's injuries continued even after Mary Doe placed Mini Rockstars on notice regarding her concerns.

191.    Additionally, because of Mini Rockstars' actions, Mary Doe has suffered the loss of Jane Doe's services and incurred medical expenses on behalf of Jane Doe.

192.    As a result of these actions, Plaintiffs seek compensatory damages in an amount to be determined at trial.

## COUNT NINE: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
*By Jane Doe, a minor, by next friend Mary Doe, and Mary Doe, individually, against Mini Rockstars Child Care Center, Co. and Mini Rockstars Childcare & Enrichment Center, Inc.*

193.    Plaintiffs incorporate Paragraphs 1 through 192 above as if each has been fully stated herein.

194.    Defendant Mini Rockstars owed Mary Doe and Jane Doe a duty of reasonable care. Mini Rockstars, as a daycare center, also owed Mary Doe and Jane Doe a heightened duty to care for the well-being and safety of young, vulnerable children.

195.    By failing to act on Mary Doe's repeated complaints about Jane Doe's injuries and the inappropriate behavior of Mr. Robinson, allowing Mr. Robinson to keep Jane Doe inside alone while her classmates and other teacher were outside, failing to report the suspected abuse, failing to investigate the abuse, hindering the DCS's investigation by abruptly closing without notice, and failing to discipline and/or terminate Darshereia Williams, Ruthie Williams, and/or Mr. Robinson, Mini Rockstars breached the duties it owed to Plaintiffs.

196.    As a result of Mini Rockstars' breaches, Plaintiffs have sustained and will continue to sustain severe emotional injuries and distress.

197.    Plaintiffs' injuries were caused in fact by Mini Rockstars' breaches of duty.

198.     Plaintiffs' injuries were proximately or legally caused by Mini Rockstars' breaches of duty. Mini Rockstars' conduct was a substantial factor in Plaintiffs' injuries. Because Mary Doe put Mini Rockstars on notice about Jane Doe's unexplained injuries, Jane Doe's disclosures about being pushed and bit by Darshereia Williams and/or Ruthie Williams, and Mr. Robinson's inappropriate conduct, Plaintiffs' injuries were reasonably foreseeable.

199.     As a result of these actions, Plaintiffs seek compensatory damages in an amount to be determined at trial.

### COUNT TEN: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
*By Jane Doe, a minor, by next friend Mary Doe, and Mary Doe, individually, against Mini Rockstars Child Care Center, Co. and Mini Rockstars Childcare & Enrichment Center, Inc.*

200.     Plaintiffs incorporate Paragraphs 1 through 199 above as if each has been fully stated herein.

201.     After learning about Jane Doe's unexplained injuries, Jane Doe's disclosures about being pushed and bit by Darshereia Williams and/or Ruthie Williams, and Mr. Robinson's inappropriate conduct, Mini Rockstars willfully refused to take any action to prevent and/or correct the behavior. In fact, it did everything it could to protect its teachers by both failing to conduct any of its own investigations and actively hindering the DCS's investigation (including by abruptly closing without notice to DCS). Moreover, each time that Mary Doe reported incidents of suspected abuse or inappropriate behavior, Mini Rockstars claimed to have no knowledge of the incidents and refused to investigate them further. Mini Rockstars never filed any mandated reports, and Mini Rockstars' Director, Ms. Williams, even accused Jane Doe of lying.

202.     Because Mini Rockstars had notice about Jane Doe's unexplained injuries, Jane Doe's disclosures about being pushed and bit by Darshereia Williams and/or Ruthie Williams, and

Mr. Robinson's inappropriate conduct, its actions—which resulted in continued abuse of Jane Doe—were reckless.

203. These actions—which resulted in the continued physical and sexual abuse of a minor—were so outrageous that they are not tolerated in a civil society.

204. As a result of Mini Rockstars' actions, Plaintiffs have suffered severe emotional injuries and experienced both physiological and psychological manifestations of emotional distress.

205. As a result of these actions, Plaintiffs seek compensatory damages in an amount to be determined at trial.

206. Because Mini Rockstars' actions were reckless, Plaintiffs seek punitive damages in an amount to be determined at trial.

## **RELIEF REQUESTED**

1. A jury to try their claims.

2. Entry of judgment in favor of Plaintiffs, and against Defendants, for compensatory damages in an amount to be proven at trial.

3. Entry of judgment in favor of Plaintiffs, and against Defendants, for any other appropriate equitable relief.

4. Entry of judgment in favor of Plaintiffs, and against Defendants, for punitive damages.

5. An award of Plaintiffs' costs, reasonable attorney's fees, and pre- and post-judgment interest.

6. Any other legal or equitable relief to which Plaintiffs may be entitled.

Dated: June 19, 2025                    Respectfully submitted,

**JESSE HARBISON LAW, PLLC**

*/s/ Jesse Ford Harbison*
Jesse Ford Harbison, BPR No. 032105
P.O. Box 68251
Nashville, TN 37206
(629) 201-7284
jesse@jesseharbisonlaw.com


**HUNTER LAW FIRM, PLC**

*/s/ Anne Bennett Hunter by JFH w/ permission*
Anne Bennett Hunter, BPR No. 022407
5115 Maryland Way, Suite 125
Brentwood, TN 37027
(615) 595-2977
anne@hunteremploymentlaw.com

*Counsel for Plaintiffs*

31